```
                IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF KANSAS


WILLIAM N. JOHNSON,            )
                               )
               Plaintiff,      )
                               )
vs.                            )     Case No. 07-1310-MLB
                               )
MICHAEL J. ASTRUE,             )
Commissioner of                )
Social Security,               )
                               )
               Defendant.      )
_____)
```

RECOMMENDATION AND REPORT

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties and has been referred to this court for a recommendation and report.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the

correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

    The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial

gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not

to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

## II.  History of case

On May 14, 2007, administrative law judge (ALJ) Jack R. Reed issued his decision (R. at 14-22).  Plaintiff alleges disability beginning June 6, 2004 (R. at 14).  Plaintiff is insured for disability insurance benefits through December 31, 2009 (R. at 14).  At step one, the ALJ found that plaintiff did not engage in

substantial gainful activity since June 6, 2004, the alleged onset date (R. at 16). At step two, the ALJ found that plaintiff had the following severe impairments: moyamoya disease, residuals of a stroke, and borderline intellectual functioning (R. at 16). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 18). After determining plaintiff's RFC (R. at 20), the ALJ found at step four that plaintiff is unable to perform past relevant work (R. at 21). At step five, the ALJ found that plaintiff can perform other jobs that exist in significant numbers in the national economy (R. at 21-22). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 22).

**III.  Did the ALJ err in making his RFC findings?**

At step two, the ALJ indicated that borderline intellectual functioning was one of plaintiff's severe impairments (R. at 16). A severe impairment is one that would have more than a minimal effect on a claimant's ability to do basic work activities.[1] Williams, 844 F.2d at 751. The regulations state that a severe

---

[1] Basic work activities are "abilities and aptitudes necessary to do most jobs," 20 C.F.R. § 404.1521(b)[416.921(b)], including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgement, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting." Social Security Ruling 85-28, 1985 WL 56856 at *3. Langley v. Barnhart, 373 F.3d 1116, 1123 (10th Cir. 2004).

impairment must significantly limit a claimant's ability to do basic work activities.  20 C.F.R. § 404.1520(c).

The ALJ then subsequently stated that he agreed with the consultative psychiatric review technique form of Dr. Warrender, who found that plaintiff's mental impairments result in mild restrictions in activities of daily living; mild difficulties in maintaining concentration, persistence, or pace; no limitation in social functioning; and no episodes of decompensation (R. at 18, 331).  The ALJ failed to mention that Dr. Warrender concluded that plaintiff's mental impairments were not severe (R. at 321, 335).  Finally, when making his RFC findings, the ALJ included no mental limitations in plaintiff's RFC (R. at 20).

Plaintiff first argues that the ALJ erred by failing to include a narrative discussion of how the evidence supported his RFC findings.  According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence."  The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.  The RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  SSR 96-8p, 1996 WL 374184 at *7.  SSR rulings are binding on an ALJ.  20

C.F.R. § 402.35(b)(1); <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); <u>Nielson v. Sullivan</u>, 992 F.2d 1118, 1120 (10th Cir. 1993).

Although it appears that the ALJ generally adopted the RFC limitations set forth by Dr. Rosch in her expert testimony (R. at 492), the ALJ nonetheless failed to indicate why he was adopting the findings of Dr. Rosch. Furthermore, the ALJ included in his RFC finding that plaintiff required a sit/stand option even though that limitation was not provided by Dr. Rosch. The ALJ offered no explanation for adding this limitation, but not others, to plaintiff's RFC.

Plaintiff's second argument is that the ALJ did not assess plaintiff's mental limitations beyond step three, or explain why no mental limitations were included in the RFC findings. The ALJ found that plaintiff had a severe impairment of borderline intellectual functioning. Such a finding indicates that this impairment has more than a minimal impact on a person's ability to perform basic work activities, or significantly limits plaintiff's ability to perform basic work activities. However, the ALJ's RFC findings include only physical limitations (R. at 20), and do not include any limitations that would be caused by borderline intellectual functioning.

As noted above, at step three, the ALJ found that plaintiff had only slight limitations in two of the four functional areas,

and no limitations or no decompensation in the other two functional areas. As the court indicated in <u>Givens v. Astrue</u>, 251 Fed. Appx. 561, 566-67 (10th Cir. Oct. 18, 2007), this step three finding creates an odd inconsistency in the ALJ's decision in light of the step two finding that plaintiff had mental impairments that caused more than minimal limitations upon claimant's ability to perform basic work-related activities, and are therefore severe impairments. This is because mild findings in the first three categories (activities of daily living/social functioning/concentration, persistence, pace) and none in the fourth category (decompensation) will generally result in a finding that plaintiff did not have a severe mental impairment unless the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. § 404.1520a(d)(1). In addition, these findings, used to determine the severity of an impairment at steps 2 and 3 of the sequential evaluation process, are not an RFC assessment. The mental RFC assessment used for steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the four broader categories. SSR 96-8p, 1996 WL 374184 at *4. The ALJ failed to make any findings regarding plaintiff's limitations, if any, in the various functions contained in the four broader categories.

Furthermore, the ALJ clearly erred when, having found plaintiff's depression severe at step two, the ALJ failed to consider or include any mental limitation in his RFC analysis. Givens v. Astrue, 251 Fed. Appx. at 567; see Hargis v. Sullivan, 945 F.2d 1482, 1488 (10th Cir.1991) ("[O]nce a mental impairment is considered to be severe, it must be included in the residual functional capacity assessment...."); 20 C.F.R. § 416.920a(d)(3). An ALJ's decision should be evaluated based solely on the reasons stated in the decision. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). However, the ALJ offered no explanation for failing to include any mental limitations in plaintiff's RFC in light of the ALJ's own finding that plaintiff had a severe impairment of borderline intellectual functioning--a finding which indicates that this impairment has more than a minimal impact on a person's ability to perform basic work activities, or significantly limits plaintiff's ability to perform basic work activities. It is not for the court to speculate as to the apparent discrepancy in the findings at step two and step three regarding the severity of plaintiff's mental impairment; likewise, the court will not speculate as to why the ALJ failed to include any mental limitations in plaintiff's RFC after finding that plaintiff had a severe mental impairment. Therefore, this case should be remanded in order for the ALJ to make findings regarding plaintiff's mental impairment that are

9

consistent at all steps of the sequential evaluation process, including steps two and three, and that are consistent with the RFC findings.  See Timbers v. Astrue, 2008 WL 253038 at *4-5, Case No. 06-1387-MLB, Doc. 19 at 9-12 (D. Kan. Jan. 29, 2008)(case remanded in light of inconsistent findings at steps two, three and in the RFC).

Plaintiff's final argument is that the ALJ erred by including a sit/stand option, but failing to specify the frequency of plaintiff's need to alternate sitting and standing. This issue was previously addressed by the court in Fairbanks v. Astrue, 2007 WL 2176029 at *3-4, Case No. 06-1206-MLB (D. Kan. June 12, 2007; report and recommendation at 6-9), and the relevant regulations and case law are again set forth below.

SSR 96-9p explains the Social Security Administration's policies regarding the impact of a RFC assessment for less than a full range of sedentary work.  On the issue of alternating sitting and standing, it states the following:

> An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand. **The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing.**  It may be

10

> especially useful in these situations to
> consult a vocational resource in order to
> determine whether the individual is able to
> make an adjustment to other work.

SSR 96-9p, 1996 WL 374185 at *7 (emphasis added).

SSR 83-12 discusses the use of the medical-vocational rules as a framework for adjudicating claims in which an individual has only exertional limitations within a range of work or between ranges of work.  One special situation covered in SSR 83-12 is the need to alternate between sitting and standing.  It states as follows:

> In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting. Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work. (Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work.)
> There are some jobs in the national economy--typically professional and managerial ones--in which a person can sit or stand with a degree of choice. If an individual had such a job and is still capable of performing it, or is capable of transferring work skills to such jobs, he or she would not be found disabled. However, most jobs have ongoing work processes which demand that a worker be in a certain place or

> posture for at least a certain length of time
> to accomplish a certain task. Unskilled types
> of jobs are particularly structured so that a
> person cannot ordinarily sit or stand at
> will.  In cases of unusual limitation of
> ability to sit or stand, a VS [vocational
> specialist] should be consulted to clarify
> the implications for the occupational base.

SSR 83-12, 1983 WL 31253 at *4.

In the case of Armer v. Apfel, 216 F.3d 1086 (table), 2000 WL 743680 (10th Cir. June 9, 2000), the ALJ found that the claimant was limited to unskilled sedentary work that would allow him to "change positions from time to time." 2000 WL 743680 at *2. The court cited to the language quoted above in SSR 96-9p and held that the ALJ's finding that the claimant would have to change positions from time to time was vague and did not comply with SSR 96-9p. The court held that the RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing because the extent of the erosion of the occupational base will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand. The ALJ's findings also must be specific because the hypothetical questions submitted to the vocational expert (VE) must state the claimant's impairments with precision. Id. at *2-3.

In the case of Vail v. Barnhart, 84 Fed. Appx. 1, 2-3 (10th Cir. Nov. 26, 2003), the ALJ had made RFC findings limiting plaintiff to light work which included a limitation to allow

plaintiff brief changes of position (alternating sitting and standing). The court stated as follows:

> Furthermore, if an ALJ finds that a claimant cannot perform the full range of work in a particular exertional category, an ALJ's description of his findings in his hypothetical and in his written decision must be particularly precise. For example, according to one of the agency's own rulings on sedentary labor, the description of an RFC in cases in which a claimant can perform less than the full range of work "must be specific as to the frequency of the individual's need to alternate sitting and standing." Social Security Ruling 96-9P, 1996 WL 374185 (S.S.A.) at *7. **Precisely how long a claimant can sit without a change in position is also relevant to assumptions whether he can perform light work.** 20 C.F.R. § 404.1567(b).

84 Fed. Appx. at **4-5 (emphasis added). The court then held that the ALJ made a critical omission in his analysis by not properly defining how often the claimant would need to change positions. 84 Fed. Appx. at *5.

The ALJ found that plaintiff can perform certain types of sedentary or light work. The regulations and case law are clear that the ALJ must be specific in setting forth the frequency of a claimant's need to alternate between sitting and standing when determining whether plaintiff can perform light or sedentary work. Furthermore, this specificity must be included in the hypothetical question to the VE. Therefore, on remand, the ALJ shall include in his RFC findings the specific frequency of plaintiff's need to alternate sitting and standing in order to

13

determine its impact on plaintiff's ability to perform work in the national economy.

**IV. Did the ALJ err by failing to resolve conflicts between the testimony of the VE and the Dictionary of Occupational Titles?**

SSR 00-4p states that before relying on VE evidence to support a disability determination or decision, an ALJ must identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by vocational experts and information in the DOT (including its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO)) and explain in the decision how any conflict that has been identified was resolved. 2000 WL 1898704 at *1. In making disability determinations, defendant will rely primarily on the DOT for information about the requirements of work. Occupational evidence provided by a VE should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between the VE evidence and the DOT, the ALJ must elicit a reasonable explanation for the conflict before relying on the VE evidence to support a decision about whether a claimant is disabled. At the hearing level, as part of the ALJ's duty to fully develop the record, the ALJ will inquire, on the record, as to whether or not there is such consistency. If a conflict exists, the ALJ must resolve the conflict by determining if the

explanation given by the VE is reasonable and provides a basis for relying on the VE testimony rather than on the DOT information.  2000 WL 1898704 at *2.

Plaintiff, according to the ALJ's RFC findings, is limited to only occasional gross and fine manipulation of the left hand (R. at 20, 492).  The problem in this case with trying to determine if there is a conflict with the VE testimony and the DOT is that the VE failed to indicate in his testimony the DOT listings for the jobs identified.  The court would note that one of the jobs identified by the VE, that of light work of ticket seller or cashier (R. at 496), was found by the ALJ as work that plaintiff could perform (R. at 22).  The position of ticket seller, with the alternate name of cashier, appears in the DOT at 211.467.030 (http:www.occupationalinfo.org).  The DOT indicates that this position requires a constant ability to reach, handle, and finger.  <u>Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles</u> (SCO) (U.S. Dept. of Labor, 1993 at 333).  The VE did not indicate that this job required the constant ability to reach, handle and finger. Thus, there would appear to be a legitimate question as to whether a person who is restricted to only occasional gross and fine manipulation of the left hand could perform this job. Therefore, on remand, the ALJ must comply with SSR 00-4p. Furthermore, when this case is remanded, new RFC findings will

need to be made which may include mental limitations, and shall include specific findings regarding the frequency of plaintiff's need to alternate between sitting and standing.

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set forth above.

Copies of this recommendation and report shall be provided to counsel of record for the parties. Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on December 17, 2008.

                              s/Donald W. Bostwick
                              DONALD W. BOSTWICK
                              United States Magistrate Judge